**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Nicholas Eddards,<br><br>    Defendant | Case No.: 2:19-cr-00289-JAD-NJK<br><br>**Order Overruling Objections and Adopting Report and Recommendation Denying Motion to Suppress**<br><br>[ECF Nos. 39, 59] |

Nicholas Eddards stands charged with various drug[1] and firearm[2] crimes after Las Vegas Metropolitan Police officer Julien Pappas[3] patted him down during a traffic stop and found a holster on his waist. Eddards moves to suppress the evidence[4] recovered from the frisk, arguing that Pappas did not have a reasonable suspicion that Eddards was armed and dangerous; his frisk exceeded the constitutional scope articulated by the Supreme Court in *Terry v. Ohio*[5] (colloquially known as a *Terry* frisk); and Pappas lied under oath to obtain a search warrant for the vehicle.[6] After an evidentiary hearing, Magistrate Judge Nancy J. Koppe recommends that I deny the motion to suppress.[7] In her report and recommendation, Judge Koppe found that (1) Pappas and his partner, Officer Edgar Nahum, testified credibly and truthfully about the

---

[1] 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B)(vii), and 18 U.S.C. § 2.

[2] 18 U.S.C. §§ 922(g)(1), 924 (a)(2), (c)(1)(A).

[3] Since the time of the incident, Pappas has been promoted to detective.

[4] Eddards does not clarify which "evidence" he wishes suppressed, presumptively referring to any items recovered from Eddards, Justin Chester, or the vehicle during the stop.

[5] *Terry v. Ohio*, 392 U.S. 1, 20–27 (1968).

[6] ECF No. 39 (motion to suppress).

[7] ECF No. 59 (report and recommendation).

incident; (2) under the circumstances, Pappas's frisk was supported by a reasonable suspicion that Eddards was armed and dangerous; and (3) Pappas did not conduct an improperly intrusive *Terry* frisk.[8] Eddards objects that Judge Koppe overlooked certain factors that should have mitigated Pappas's suspicion that Eddards was armed and dangerous and that Pappas's testimony about the scope of the *Terry* frisk was inconsistent and not credible.[9]

Having reviewed de novo the challenged portions of Judge Koppe's recommendation, I find that Pappas testified credibly, had reasonable suspicion to believe that Eddards was armed and dangerous, and did not exceed the scope of a proper *Terry* frisk. I thus find that the frisk was lawful and adopt Judge Koppe's report and recommendation, overrule Eddards's objections, and deny Eddards's motion to suppress.

## Discussion[10]

### I. Standard of review

When a magistrate judge provides findings and recommendations in a criminal case, the district judge "may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."[11] Local Rule IB 3-2(b) only requires de novo consideration of specific objections. The standard for reviewing unobjected-to

---

[8] *Id.*

[9] ECF No. 60 (objection to the report and recommendation).

[10] After reviewing the evidence and a recording of the evidentiary hearing, ECF Nos. 39, 39-1–5, 43, 45; Hearing Tr. (9/11/2020), I find that Judge Koppe's factual "Background" section is accurate and complete, and I adopt that section in full. Because the parties are familiar with the facts, I do not repeat them here except as necessary to my analysis.

[11] Fed. R. Crim. P. 59(b)(3).

sections is left to the district judge's discretion.[12]  Because Eddards challenges the magistrate judge's credibility findings and determination that Pappas had reasonable suspicion to conduct, and properly conducted, a *Terry* frisk, I evaluate only those issues.  I adopt all other findings and conclusions without further review.[13]

## II.    The *Terry* frisk

"The Fourth Amendment guarantees 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'"[14]  In *Terry v. Ohio*, the Supreme Court sanctioned "limited police intrusions on a person's freedom of movement and personal security when an officer's suspicion falls short of the 'probable cause' required to execute an arrest or a 'full' search."[15]  When initiating a *Terry* stop and investigating potential criminal activity, an officer "must have reasonable suspicion to believe 'criminal activity may be afoot.'"[16]  But to escalate to a *Terry* frisk, the officer must have "reasonable suspicion that a suspect 'is armed and presently dangerous.'"[17]  Reasonable suspicion must be objective and requires the officer to "point to specific and articulable facts [that], taken together with rational inferences from those facts, reasonably warrant that intrusion."[18]  A "mere 'inchoate and

---

[12] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.") (emphasis in original)).

[13] I find this objection suitable for resolution without a hearing.

[14] *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012) (quoting U.S. Const. amend. IV) (brackets omitted) (internal quotation marks omitted).

[15] *Thomas v. Dillard*, 818 F.3d 864, 874 (9th Cir. 2016) (quoting *Terry*, 392 U.S. at 20–21 (1968)).

[16] *Id.*

[17] *Id.* at 876.

[18] *Terry*, 392 U.S. at 21.

unparticularized suspicion or hunch'" that a person is armed and dangerous does not establish reasonable suspicion.[19]  In challenging both the justification behind and the scope of the *Terry* frisk, Eddards argues that Judge Koppe erred by not considering (1) the passage of time between the stop and the frisk, which ought to have alleviated the officer's suspicion that Eddards was armed and dangerous; (2) Pappas's willingness to let Eddards "freely move around" after being handcuffed; and (3) the logical and factual contradictions in Pappas's testimony.[20]

### A.  Pappas's *Terry* frisk was supported by reasonable suspicion.

The Ninth Circuit has recognized that the reasonable-suspicion inquiry examines "the totality of the circumstances" and "requires consideration of all the facts and circumstances [that] an officer confronts in the encounter,"[21] relying on the "collective knowledge of the officers involved[] and the inferences reached by experienced, trained officers."[22]  Multiple factors may give rise to reasonable suspicion, including: "observation of a visible bulge in clothing," "sudden movements by defendants" or "repeated attempts to reach for an object that was not immediately visible," and "the nature of the crime suspected."[23]  In *United States v. Burkett*, for example, the Ninth Circuit concluded that an officer had an objectively reasonable suspicion to perform a *Terry* frisk when the "unusually nervous" defendant, in the context of a traffic violation, ignored "multiple safe places to pull over" before coming to a stop "eight-tenths of a mile" after being signaled to pull over, responded evasively to the officer's questions, made "furtive movements"

---

[19] *Maryland v. Buie*, 494 U.S. 325, 332 (1990) (quoting *Terry*, 392 U.S. at 27) (some internal quotation marks omitted).

[20] ECF No. 60.

[21] *Thomas*, 818 F.3d at 876 (internal quotation marks and citations omitted).

[22] *United States v. Burkett*, 612 F.3d 1103, 1107 (9th Cir. 2010).

[23] *United States v. Flatter*, 456 F.3d 1154, 1157–58 (9th Cir. 2006).

in the vehicle by "either hiding or retrieving something," and opened the car door "unnaturally."[24] Likewise, the panel in *United States v. Flippin* opined that a defendant's sudden grab for her purse while an officer was turned away gave rise to reasonable suspicion that the defendant was dangerous.[25]

    Although this case presents, in some ways, a closer call than either *Burkett* or *Flippin*, I find that Pappas had reasonable suspicion that Eddards was armed and dangerous. While performing proactive gang enforcement in an area plagued by crimes being committed in rental cars, Pappas and Nahum attempted to pull Eddards over after he rolled through a stop sign in what the officers suspected was a rental vehicle.[26] Like the *Burkett* defendant, Eddards refused to immediately pull over at the first safe location, instead drawing the officers deep into a parking lot.[27] After the car finally stopped, Pappas was surprised to see that Eddards had opened the car door to watch him, as though he wanted to make note of the officer's location, and Pappas noticed that the visibly nervous Eddards had a face tattoo consistent with membership in a local gang.[28] While the officers checked Eddards's and his passenger Justin Chester's identification and registration from the safety of their police cruiser—confirming that the vehicle was a rental car, the vehicle's plates and identification number did not match the car's make, and both suspects were convicted felons—Eddards and Chester, like the *Flippin* defendant, made sudden movements that were sufficient to shake the vehicle.[29] Those movements, which were

---

[24] *Burkett*, 612 F.3d at 1102–05.
[25] *United States v. Flippin*, 924 F.2d 163, 164–66 (9th Cir. 1991).
[26] Hearing Tr. (9/11/2020) at 1:57–1:58 p.m., 1:55 p.m., 3:20 p.m.
[27] *Id.* at 1:55 p.m.
[28] *Id.* at 2:00 p.m., 2:10 p.m., 2:32–2:34 p.m.
[29] *Id.* at 2:03–2:05 p.m., 2:07–2:08 p.m., 2:35–2:36 p.m., 3:23–3:24 p.m.

far more exaggerated than the "furtive" ones deemed suspicious in *Burkett*, made both officers concerned for their safety.[30] Taken together, Eddards's refusal to timely stop his "cold-plated"[31] rental car, his apparent nervousness and quick, frantic movements, as well as his perceived gang affiliation and past criminal history, were sufficient to give Pappas reasonable suspicion that Eddards was armed and dangerous.

Effectively conceding that these factors could give rise to reasonable suspicion, Eddards argues that other, overlooked factors should have sufficiently "mitigat[ed]"[32] Pappas's safety concerns, thereby rendering the frisk unlawful. First, Eddards correctly points out that Pappas approached his car twice, but only performed the frisk on the second approach. Eddards thus believes that any conduct observed prior to the first stop is irrelevant because it did not induce Pappas to perform an immediate *Terry* frisk. Second, Eddards claims that the officers' willingness to let him sit idle for five minutes as they checked his identification should have decreased their concern that he was dangerous, given that he did not run away or show any sign of intending to harm others. Third, he asserts that Pappas's willingness to let Eddards lift his own shirt and "move freely" while handcuffed undermines Pappas's testimony that he thought Eddards was dangerous. And fourth, he argues that there are innocent reasons for his suspicious movements—like the fact that "the vehicle [was] turned off in July heat." None of these arguments is persuasive.

To his first and second point, Eddards cites no precedent, controlling or otherwise, holding that a delay in performing a *Terry* frisk to gather more information somehow negates the

---

[30] *Id.* at 2:04 p.m.
[31] *Id.* at 1:51–1:52 p.m.
[32] ECF No. 60 at 5.

indicia that grounded an officer's initial suspicion that the suspect is armed or dangerous. But even crediting Eddards's arguments and setting aside the observations made before the first approach, Pappas still had sufficient reason to believe Eddards was armed and dangerous before patting him down. While checking Eddards's identification (and learning of his prior, violent-felony convictions), Pappas noted that Eddards and Chester were "both super [expletive] nervous," watched Eddards shift around in the vehicle so much that it began to rock, and, when Pappas approached, found Eddards hanging outside of the vehicle, one hand clutching his phone.[33]  These facts are sufficient to justify Pappas's reasonable suspicion that Eddards was armed and dangerous.[34]  And to Eddards's third point, not only did Pappas keep a constant, controlling hand on Eddards's handcuffs, but he only permitted Eddards to raise his shirt *after* Pappas had finished the pat-down and determined that Eddards had a gun holster under his shirt.[35]  Nor does Eddard's fourth argument—which involves his "'innocent' explanations for his"[36] shaking of the vehicle—persuade me to reject Judge Koppe's recommendation. His sudden movements, coupled with the additional facts and observations about Eddards, provided "an objectively reasonable basis for suspecting that [he] had a weapon." [37]

---

[33] ECF No. 39-4.

[34] *See also United States v. Hanlon*, 401 F.3d 926, 929 (8th Cir. 2005) (determining that the officer had reasonable suspicion to perform a *Terry* frisk of the defendant truck driver when questions remained about the "truck's registration status" and the defendant was extremely nervous); *United States v. Arnott*, 758 F.3d 40, 45 (1st Cir. 2013) (reasoning that the "totality of the circumstances" gave the officer reasonable suspicion that the defendant might be dangerous, largely because the defendant "appeared unduly nervous" and "his hands were shaking so badly that he could scarcely hold out his driver's license"); *cf.*, *Michigan v. Summers*, 452 U.S. 692, 702 (1981) (noting, in dicta, that "articulable facts" like "sudden violence or frantic efforts to conceal or destroy evidence" may indicate the possibility of "risk of harm" to officers).

[35] ECF No. 39-4.

[36] *Burkett*, 612 F.3d at 1107.

[37] *Id.*

**B.      Pappas credibly testified and did not exceed the scope of a *Terry* frisk.**

To pass constitutional muster, a *Terry* frisk must be "carefully limited" to "the outer clothing . . . in an attempt to discover weapons [that] might be used to assault" an officer.[38] "In order to be lawfully seized, the identity of the item must be 'immediately apparent' to the officer while conducting a lawful search."[39] In ruling that this *Terry* frisk was proper, Judge Koppe made two credibility findings about Pappas's testimony: first, that Pappas "immediately" knew that the object on Eddards's torso was a holster; and second, that Eddards lifted his own shirt, showing Pappas the holster, before Pappas again lifted the shirt to retrieve the holster. Eddards claims that both findings are in error, argues that the officer's recitation of events is contradictory and illogical, and thus contends that Pappas exceeded the scope of a *Terry* frisk by lifting Eddards's shirt.[40] The government spills little ink on this issue, merely reaffirming that the magistrate judge arrived at her conclusion after finding both witnesses credible and reviewing the video evidence supporting the officers' testimony.[41]

Despite the government's halfhearted defense of the matter, I hold that Pappas did not exceed the scope of a *Terry* frisk. Generally, reviewing courts give "special deference" to credibility determinations made by the court conducting an evidentiary hearing,[42] largely

---

[38] *Terry*, 392 U.S. at 20, 29–30.

[39] *United States v. Miles*, 247 F.3d 1009, 1013 (9th Cir. 2001) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375–76 (1993)).

[40] ECF No. 60 at 4–5.

[41] ECF No. 63 at 2.

[42] *United States v. Nelson*, 137 F.3d 1094, 1111 (9th Cir. 1998) ("This court gives special deference to the district court's credibility determinations."); *United States v. Brown*, 728 Fed. Appx. 614, 618 (9th Cir. 2018) (applying, on review, "special deference" to the magistrate judge's credibility determination, which the district court adopted); *see also United States v. Ramos*, 923 F.2d 1346, 1356 (9th Cir. 1991) ("We give special deference to a trial court's

because that court is best positioned to assess the demeanor and trustworthiness of a witness. Having reviewed both the hearing transcript and the officers' body-camera footage of their interactions with Eddards, I do not perceive any clear error in Judge Koppe's credibility determinations, and I independently find Pappas's testimony credible. As Pappas stated during the evidentiary hearing, he immediately knew that the object was a holster because of its placement and feel, his own experience carrying a concealed weapon, and his training.[43] And while Pappas asked Eddards multiple times what the object was, Pappas testified that he did so not because he could not identify it, but because he wanted Eddards to be honest.[44] After Eddards varyingly described the object as a wallet and a belt buckle, Pappas muttered a resigned "it's a [expletive] holster" when he saw the object.[45] Pappas also testified multiple times, both on direct and cross examination, that Eddards lifted his own shirt to reveal the holster—a fact that appears corroborated by both officers' body-camera footage.[46] So I agree with the

---

credibility findings, even when that court adopts the proposed findings verbatim."), *overruled on other grounds by United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001).

[43] Hearing Tr. (9/11/2020) at 2:12–2:13 p.m., 2:21 p.m., 2:43–2:44 p.m., 2:55 p.m., 3:31 p.m., 3:58 p.m., 4:02 p.m.

[44] *Id.* at 2:43–2:44 p.m., 4:02 p.m.

[45] *Id.* at 2:12 p.m., 2:41–2:42 p.m., 2:44 p.m., 3:36 p.m.; ECF No. 39-4. I disagree with Eddards that Pappas "sounded surprised" when he made this statement. *See* ECF No. 60 at 7.

[46] Hearing Tr. (9/11/2020) at 2:13 p.m., 2:45 p.m., 3:34 p.m., 3:49 p.m., 4:01 p.m., 4:04–4:05 p.m., 4:07 p.m.; ECF No. 39-4. Even were Pappas to have exceeded the scope of a *Terry* frisk once he reached under Eddards's shirt, it seems apparent that Pappas's immediate identification of the holster while patting down Eddards would have been independently sufficient to warrant a search of his car. *See United States v. Spencer*, 1 F.3d 742, 746 (9th Cir. 1992) (holding that "police were also justified in believing that a firearm might be in the vehicle after they discovered the shoulder holster underneath [the suspect's] jacket," thus supporting "the warrantless search of the stopped car") (citing *United States v. Baker*, 850 F.2d 1365, 1368 (9th Cir. 1988)). But as neither party addresses this issue, and the magistrate judge did not consider it, I don't rest my decision on it.

magistrate judge's rulings, adopt her findings in full, overrule Eddards's objections, and deny the motion to suppress the evidence recovered from the incident.

**Conclusion**

IT IS THEREFORE ORDERED that Eddards's objections **[ECF No. 60]** to Magistrate Judge Koppe's report and recommendation **[ECF No. 59] are OVERRULED.**

IT IS FURTHER ORDERED that the report and recommendation **[ECF No. 59] is ADOPTED.** Eddards's motion to suppress **[ECF No. 39] is DENIED.**

_____
U.S. District Judge Jennifer A. Dorsey
January 19, 2021